UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**LARRY KUNTZ, ET AL.**                                           **CIVIL ACTION**

**VERSUS**                                                        **NUMBER: 24-1244**

**LOUISIANA MARSH ADVENTURES, L.L.C.**                            **SECTION: "A" (5)**

## ORDER AND REASONS

Before the Court is the Motion for Leave of Court to File Superseding Complaint for Damages Pursuant to FRCP 15 (rec. doc. 17) filed by Plaintiff. Defendant opposes the motion (rec. doc. 19), and Plaintiff filed a reply. (Rec. doc. 23). Having reviewed the pleadings and the case law, the Court rules as follows.

### I.    Factual Background

Plaintiffs filed their original Complaint on May 15, 2024 against Defendant, Louisiana Marsh Adventures, L.L.C. ("LMA"), asserting claims of ordinary negligence under the General Maritime Law of the United States. (Rec. doc. 1 at ¶ 5). This lawsuit involves two separate and distinct claims for personal injuries by two different individuals who reside outside of the State of Louisiana. LMA operates a guided alligator hunting excursion on and around the Lake Lery area of Delacroix, Louisiana. The lawsuit stems from an alleged vessel grounding that occurred during Plaintiffs' participation in LMA's guided alligator hunting excursion, which, according to Plaintiffs, resulted in their injuries. (*Id.* at ¶ 5).

Specifically, on September 6, 2023, Larry Kuntz and Richard Przybelski arrived at LMA's facility and dock to participate in a scheduled alligator hunting excursion. (*Id.*). As a condition to participate in the guided alligator hunting excursion, each individual is required to sign a Passenger Release and Hold Harmless Agreement ("Passenger Release").

(Rec. doc. 19-1). Plaintiffs admit that they each signed a Passenger Release prior to participating in the alligator hunting excursion. (Rec. docs. 19-3, 19-4).

After executing the Passenger Release and participating in the pre-boarding safety meeting, Plaintiffs boarded the vessel to begin the excursion. Plaintiffs allege that they were both injured when the Captain, "operating the vessel on navigable waters, struck land at a high rate of speed." (Rec. doc. 1 at ¶ 5). Specifically, Plaintiffs allege that as a result of the grounding, they were both knocked off their seats down into the boat and sustained injuries. (*Id.* at ¶¶ 7-8).

After the incident, the Captain asked Plaintiffs whether they wished to return to shore for medical treatment, and Plaintiffs advised that they wanted to continue the guided alligator hunt. Indeed, following the subject incident, both Plaintiffs not only participated in the alligator hunt, but successfully baited, trapped, killed, and assisted in pulling six alligators into the subject vessel before returning to shore. There is even a photograph depicting Kuntz with two of the alligators killed during the guided alligator hunting excursion. (Rec. doc. 19-5). The filing of this lawsuit followed on May 15, 2024. (Rec. doc. 1).

## II.    Legal Standard

Both parties agree the Plaintiffs filed their proposed amended Complaint before the <u>amended</u> Scheduling Order deadline of October 24, 2025.[1] Plaintiff's pleading is thus governed by Federal Rule of Civil Procedure 15(a)(2) and not the more stringent good-cause standard under Rule 16. *Tran v. Jefferson Par. Sch. Bd.*, No. CV 24-2777, 2025 WL

---

[1] Notably for purposes of the Court's analysis here, the original deadline for amendments to pleadings was December 30, 2024. (Rec. doc. 9). After the District Judge granted a motion to continue (rec .doc. 12), a new deadline was set for October 27, 2025. (Rec. doc. 14). The current motion was filed before <u>that</u> deadline.

903140, at *2 (E.D. La. Mar. 25, 2025). Under Rule 15(a)(2), the "court should freely give leave [to amend] when justice so requires." *Id.* A court must balance the difficult task of assuring a party a fair opportunity to present its claims and defenses while at the same time protecting the district court from being imposed upon by the presentation of theories seriatim. *Gregory v. Mitchell*, 634 F.2d 199, 203 (5th Cir. 1981) (citation omitted). Denial of leave to amend is reviewed for abuse of discretion. *Carroll v. Fort James*, 470 F.3d 1171, 1173-74 (5th Cir. 2006) (citation omitted). Absent a "substantial reason," the court's discretion "'is not broad enough to permit denial'" of a request for leave to amend. *Mayeaux v. La. Health Serv. & Indem. Co.*, 376 F.3d 420, 425 (5th Cir. 2004) (quoting *Martin's Herend Imps., Inc. v. Diamond & Gem Trading United States of Am. Co.*, 195 F.3d 765, 770 (5th Cir. 1999)).

Leave to amend is not, however, automatic. *Avatar Expl., Inc. v. Chevron USA, Inc.*, 933 F.2d 314, 320 (5th Cir. 1991) (citation omitted). While Rule 15 favors granting leave to amend, denial of leave is justified in certain circumstances, such as when a movant unduly delays or acts with bad faith or dilatory motive. *Id.* (citation omitted). The five factors considered in determining whether leave to amend is appropriate or whether there is substantial reason to deny the request are: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by previous amendments, (4) undue prejudice to the opposing party, and (5) futility of the amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962); *Flannigan v. Universal Steel Am., Inc.*, No. CV 22-3080, 2023 WL 11918265, at *4 (E.D. La. June 29, 2023), *report and recommendation adopted*, No. CV 22-3080, 2024 WL 4041322 (E.D. La. Sept. 4, 2024); *SMH Enters., L.L.C. v. Krispy Krunchy Foods, L.L.C.*, 340 F.R.D. 554, 559-60 (E.D. La. 2022).

**III.     Analysis**

Plaintiffs seek to amend their Complaint to add two additional Defendants, Desi Fulmer and Dob Beshel, and to assert a claim for gross negligence. For its part, Defendant asks the Court to deny Plaintiffs' motion to amend to add the gross negligence claim because Plaintiffs have been dilatory (guilty of undue delay), have filed the claims in bad faith, the amendment will impose undue prejudice on Defendants, and Plaintiffs' claims are futile.

**A.     Undue Delay**

Rule 15(a)(2) does not itself impose a time limit on seeking leave to amend. *Smith v. EMC Corp.*, 393 F.3d 590, 595 (5th Cir. 2004) (stating that Rule 15(a) does not impose a time limit "'for permissive amendment'") (citation omitted); *see also Mullin v. Balicki*, 875 F.3d 140, 149 (3d Cir. 2017) (citation omitted) ("Lacking a time limit or an outer bound on when amendment is permissible, [Rule 15(a)(2)] instructs courts to freely give leave to amend when justice so requires."). However, a litigant's failure to assert a claim as soon as he could have done so is a proper factor to consider in deciding whether to grant leave to amend. *See Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865 (5th Cir.2003) (stating that a "litigant's failure to assert a claim as soon as he could have is properly a factor to be considered in deciding whether to grant leave to amend"). At some point, a plaintiff's delay can be procedurally fatal. *Smith*, 393 F.3d at 595 (citing *Whitaker v. City of Houston*, 963 F.2d 831, 836 (5th Cir. 1992)); *Matter of Southmark Corp.*, 88 F.3d 311, 315-16 (5th Cir. 1996) (affirming denial of motion to amend where plaintiff sought to add claim that it had knowledge of for almost a year and stating that "[l]iberality in pleading does not bestow on a litigant the privilege of neglecting her case for a long period of time"). In that situation, a

plaintiff must meet the burden of showing that the delay "was due to oversight, inadvertence, or excusable neglect." *Id.* (citation omitted); *see also Parish v. Frazier*, 195 F.3d 761, 763 (5th Cir. 1999) (citations omitted). Further, "delay alone is an insufficient basis for denial of leave to amend: The delay must be undue, *i.e.*, it must prejudice the nonmoving party or impose unwarranted burdens on the court." *Mayeaux*, 376 F.3d at 427 (citations omitted).

Plaintiffs provide no justification as to why the same factual allegations alleged to support their claim of ordinary negligence in May of 2024 now support a claim for gross negligence in October of 2025. Plaintiffs blithely state that they now "believe the facts of this case will show the operator of the vessel . . . operated in a grossly negligent manner." (Rec. doc. 17-1 at 1). However, the "facts" alleged by Plaintiffs to support this new claim of gross negligence are the same as those outlined in Plaintiffs' original Complaint. *See, e.g., Rosenzweig*, 332 F.3d at 865 (affirming district court's denial of motion to amend when "[p]laintiffs concede they have not raised any facts which were not available previous to the district court's opinion. In this regard, plaintiffs did not exercise diligence. Moreover, the motion to amend hardly presents any new information."). Plaintiffs have alleged no new facts to support their new claim of gross negligence. In short, nothing has changed and no new information has been discovered during this litigation that would explain or justify Plaintiffs' decision to now assert a claim of gross negligence.

As no new factual information has been alleged to support their claim of gross negligence, Plaintiffs must provide some justification for their delay in bringing this new claim. However, Plaintiffs make no attempt to excuse their delay. Instead, Plaintiffs simply argue that because their proposed amendment was timely filed, LMA must show a good

5

faith basis for objecting to their proposed amendment. (*See id.* at 2). Because Plaintiffs have provided zero justification for why – after a year-and-a-half of litigation – they now seek to assert a claim for gross negligence based on the same factual allegations originally alleged, Plaintiffs have unduly delayed in moving to amend their Complaint to assert a claim for gross negligence.

### B.    Bad Faith

The Fifth Circuit has defined bad faith generally as

> implying or involving actual or constructive fraud, or a design to mislead or deceive another, or a neglect or refusal to fulfill some duty or some contractual obligation, not prompted by an honest mistake as to one's rights or duties but by some interested or sinister motive. The term bad faith means more than mere bad judgment or negligence, it implies the conscious doing of a wrong for dishonest or morally questionable motives.

*Industrias Magromer Cueros y Pieles S.A. v. La. Bayou Furs Inc.*, 293 F.3d 912, 922 (5th Cir. 2002) (citation omitted) (interpreting Louisiana law).

This factor gives the Court some pause in this case. As LMA outlines in its opposition,

> As noted above, since suit was filed the parties have been engaged in early settlement discussions in an attempt to resolve the claims. Given that Plaintiffs' negligence claims are governed under General Maritime Law, LMA's position from the outset of negotiations has been that the Release Agreements signed by Plaintiffs are valid and enforceable. Further, as early as November 20, 2023, months before suit was filed, LMA advised Plaintiffs' counsel of this position and provided copies of the subject Release Agreements executed by his clients. Despite this, Plaintiffs' original Complaint made no allegation that the Release Agreements were unenforceable or that LMA's conduct constituted "gross negligence."
>     Indeed, it was only during the parties' settlement discussions and related discussions regarding the enforceability of the Release Agreements that Plaintiffs' counsel suggested that the Release Agreements may be unenforceable if gross negligence was found. In response, undersigned counsel reminded Plaintiffs' counsel that only a claim of ordinary negligence has been asserted against LMA, and there has never been any suggestion or allegation that LMA or the vessel operator were grossly negligent.

>Nonetheless, on October 24, 2025, Plaintiffs' counsel circulated a draft Superseding Complaint alleging, for the first time, a claim for gross negligence based solely on the alleged speed of the vessel. To be clear, Plaintiffs do not allege any new or additional factual allegations to support their new claim of gross negligence. Because there has clearly been no new factual information since suit was filed over a year-and-a-half ago that would support an allegation of gross negligence, Defendants rejected Plaintiffs [sic] request for consent and objected to the draft Superseding Complaint.

(Rec. doc. 19 at 5-6) (footnote omitted).

Plaintiffs do not refute this version of the underlying facts. This troubles the Court. While LMA has not filed a dispositive motion, it clearly intends to do so based on Plaintiffs' original Complaint and their signed Passenger Releases. To sidestep such a filing, Plaintiffs now seek to change their claim of ordinary negligence into one of gross negligence, yet the proposed amended Complaint contains no new facts to support such a conversion. Indeed, as Plaintiffs readily admit, little discovery has occurred in this lawsuit. (Rec. doc. 23 at 2). Plaintiffs filed this lawsuit over a year and a half ago. No new information has arisen to support Plaintiffs' desire to convert their claim of ordinary negligence into gross negligence, apart from the fact that LMA has notified Plaintiffs of its argument that their signed Passenger Releases negate any claim of ordinary negligence.

In *Wimm v. Jack Eckerd Corp.*, the Fifth Circuit stated:

>We commented, however, that absent these special circumstances, [a party's] awareness of facts and failure to include them in the complaint might give rise to the inference that the [party] was engaging in tactical maneuvers to force the court to consider various theories seriatim. In such a case, where the movant first presents a theory difficult to establish but favorable and, only after that fails, a less favorable theory, denial of leave to amend on the grounds of bad faith may be appropriate.
>
>*Id.* This case presents circumstances very similar to those which we foresaw in *Dussouy*. Wimm and Speer were aware of the facts supporting their mislabeling and DTPA claims before they initiated this action, but they did not present those claims until summary judgment was imminent, nine months after the action was initiated. **Consequently, we conclude that the**

7

> **district court's finding of bad faith and dilatory motive is supported by the record and by our opinion in *Dussouy*.** *See id.*; *see also Mitsubishi Aircraft Int'l, Inc. v. Brady*, 780 F.2d 1199, 1203 (5th Cir. 1986) (stating that failure to urge a claim which is "usually apparent at the outset of a case . . . strongly suggests either a lack of diligence . . . or a lack of sincerity"); *cf. Auster Oil & Gas, Inc. v. Stream*, 764 F.2d 381, 391 (5th Cir. 1985) (holding that district court abused its discretion by denying leave to amend where movant "asked for amendment promptly upon discovering the basis for new allegations"); *Barrett v. Indep. Order of Foresters*, 625 F.2d 73, 75 (5th Cir. 1980) (affirming denial of leave to amend, although bad faith and dilatory motive not found, where "amendment sought to add several new parties and additional counts," and "[e]ven though the motion was not filed until nearly ten months after the original complaint, there would appear to be no matters . . . which could not have been raised initially"); *Layfield v. Bill Heard Chevrolet Co.*, 607 F.2d 1097, 1099 (5th Cir. 1979) (upholding denial of leave to amend, although bad faith and dilatory motive not found, where "all of the facts relevant to the proposed amendment were known to the [movant] at the time she filed her original complaint"), *cert. denied*, 446 U.S. 939, 100 S. Ct. 2161, 64 L.Ed.2d 793 (1980).

3 F.3d 137, 141 (5th Cir. 1993) (bold emphasis added).

In this context, the Fifth Circuit has held that a court must consider whether the proposed amendment (1) merely proposes alternative legal theories for recovery on the same underlying facts or (2) fundamentally alters the nature of the case. *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 246 n.2 (5th Cir. 1997). Amendments that fall into the former category generally should be permitted, as they advance Rule 15(a)'s policy of promoting litigation on the merits rather than on procedural technicalities; amendments that fall into the latter category, however, may be denied if the circumstances warrant. *Mayeaux*, 376 F.3d at 427. Here, they clearly do.

Plaintiffs' so-called "Amended Complaint" – an unabashed attempt to avoid a dispositive motion based on the Passenger Releases – essentially pleaded a fundamentally different case with a new cause of action and two new parties. As stated by the Fifth Circuit, "when late tendered amendments involve new theories of recovery and impose

additional discovery requirements, courts [of appeal] are less likely to find an abuse of discretion due to the prejudice involved." *Mayeaux*, 376 F.3d at 427 (citing *Bell v. Allstate Life Ins. Co.*, 160 F.3d 452, 454 (8th Cir. 1998)).  In their proposed Amended Complaint, Plaintiffs are effectively reconstructing the case anew, after it had been pending in this Court for over a year and a half.  Such reconstructing – with no new facts pleaded to support a wholly new alternative theory to avoid a potential defense – would unduly prejudice LMA and change the course and scope of this litigation after over one and a half years.  As the case law cited above suggests, that is the very nature of bad faith.  This factor weighs against granting leave to amend.

### C.   Prejudice

The Fifth Circuit and other courts have found prejudice when the amendment is asserted after the close of discovery; after dispositive motions have been filed, briefed, or decided; or on the eve of or in the middle of trial.  *See Smith*, 393 F.3d at 594-96 (affirming denial of leave to amend based on undue delay and prejudice when amendment would add a new claim in the middle of trial after discovery had closed); *Campbell v. Emory Clinic*, 166 F.3d 1157, 1162 (11th Cir. 1999) (citation omitted) ("Prejudice and undue delay are inherent in an amendment asserted after the close of discovery and after dispositive motions have been filed, briefed, and decided."); *Solomon v. N. Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (affirming denial of leave to amend when the plaintiff filed the motion "on the eve of the discovery deadline"); *see also Ruby Slipper Cafe, L.L.C. v. Belou*, No. 18-01548, 2018 WL 11179117, at *2 (E.D. La. July 3, 2018) (looking to whether the filing is within the court-imposed deadlines or would require the re-opening of discovery to assess undue delay and prejudice).  A defendant is prejudiced if an amendment would

9

require that the defendant "reopen discovery and prepare a defense for a claim different from the [one] . . . that was before the court." *Smith*, 393 F.3d at 596 (quoting *Duggins v. Steak 'N Shake, Inc.*, 195 F.3d 828, 834 (6th Cir. 1999)).

Likewise, amendments that fundamentally alter the nature of the case are considered prejudicial. *In re Am. Int'l Refinery, Inc.*, 676 F.3d 455, 467 & n.12 (5th Cir. 2012) (finding leave properly denied when proposed amendment was based on documents known to plaintiff for over a year and added new causes of action that would have "dramatically altered the subject matter of the suit at a late juncture . . . requir[ing] expansive [additional] discovery and litigation"); *Mayeaux*, 376 F.3d at 427-28 (finding that complaint would be "fundamentally altered" when proposed amendment would destroy jurisdiction and "effectively reconstruct the case anew."). As this Court has found that the proposed amendment here would fundamentally alter the nature of the case, prejudice to LMA exists, and this factor weighs against granting leave to amend.

### D. Futility

Consideration of the futility factor requires the Court to assess whether the amended complaint would survive a Rule 12(b)(6) motion (*i.e.*, whether it states a plausible claim for relief). *Marucci Sports, L.L.C. v. Nat'l Collegiate Athletic Ass'n*, 751 F.3d 368, 378 (citing *Stripling v. Jordan Prod. Co.*, 234 F.3d 863, 873 (5th Cir. 2000)). The Supreme Court clarified the Rule 12(b)(6) standard of review in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To avoid dismissal, a complaint must contain sufficient factual matter to state a claim to relief that is plausible on its face (*i.e.*, the factual allegations must "be enough to raise a right to relief above the speculative level"). *Twombly*, 550 U.S. at 555. It is not enough to allege facts consistent

with a claim because the allegations must move past possibility and to plausibility of "entitlement to relief." *Id.* at 557-58; *Iqbal*, 556 U.S. at 678. If the "facts" alleged are "merely consistent" with those minimally required to establish liability, the complaint "stops short of the line between possibility and plausibility." *Iqbal*, 556 U.S. at 678 (citation omitted).

> Determining whether a complaint states a plausible claim for relief [is] … a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not "shown" – "that the pleader is entitled to relief."

*Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)) (internal citation omitted); *see also Gonzales v. Kay*, 577 F.3d 600, 603 (5th Cir. 2009) (citation omitted) (stating that when the facts do not allow the court to infer more than a mere possibility of misconduct, the complaint does not show that the pleader is entitled to relief). Although the Court must accept all well-pleaded facts as true and consider the complaint in the light most favorable to the plaintiff, the Court should not accept as true "conclusory allegations, unwarranted factual inferences, or legal conclusions." *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007) (citation omitted); *Gentilello v. Rege*, 627 F.3d 540, 544 (5th Cir. 2010) (citations omitted); *see also Twombly*, 550 U.S. at 555 (The "obligation to provide the grounds of [ ] entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.") (citations and internal quotation marks omitted).

This Court need not consider this factor and specifically declines to address it. *See Tran v. Jefferson Par. Sch. Bd.*, No. 24-2777, 2025 WL 903140 (E.D. La. Mar. 25, 2025) (declining to conduct futility analysis in the context of a Rule 15 motion to amend because "[t]his Court lacks authority to address substantive issues that have not been referred,

however, and those issues are best addressed in the context of resolving . . . any subsequently-filed motions addressing substantive issues."). This Court's resolution of the foregoing three factors has already convinced the Court that conversion of Plaintiffs' ordinary negligence claim to one of gross negligence is not warranted here.

### E. The Additional Two Defendants

LMA does not object to Plaintiffs' request to name the operator of the vessel, Captain Desi Fulmer, as a Defendant. (Rec. doc. 19 at 1 n.1). However, LMA objects to the addition of the deckhand, Captain Don Beshel, on the ground that Plaintiffs have failed to allege any claims against him. (*Id.*). However, this Court's reading of the proposed Amended Complaint reveals that Plaintiffs assert the same claims against Fulmer and Beshel, using an "and/or" between them.

This appears to be a case of Plaintiffs not knowing who the actual operator of the vessel was at the time of the accident. Plaintiffs state that "the accident and injuries occurred due to the wanton and reckless behavior of the boat operator, who plaintiffs believe was either Desi Fulmer or Don [B]eshel, who operated the vessel at high [sic] rate of speed under the conditions . . . ." (Rec. doc. 17-4 at 3). As LMA has now clarified that the operator of the vessel was Fulmer and not Beshel (rec. doc. 19 at 1 n.1), this Court will allow the addition of Fulmer as unopposed but not Beshel. The denial as to Beshel is without prejudice to add him as a defendant if future discovery reveals him to have been the operator of the vessel.

## IV. Conclusion

For the foregoing reasons,

12

**IT IS ORDERED** that Motion for Leave of Court to File Superseding Complaint for Damages Pursuant to FRCP 15 (rec. doc. 17) is **GRANTED IN PART** and **DENIED IN PART** as outlined above.

New Orleans, Louisiana, this ⎯4th⎯ day of ⎯⎯⎯December⎯⎯⎯, 2025.

⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯
**MICHAEL B. NORTH**
**UNITED STATES MAGISTRATE JUDGE**